## PEOPLE v. NEEDHAM.

1. CRIMINAL LAW—ROBBERY—COMMON LAW—STATUTES.
   The common-law crime of robbery has been superseded in this State by a statutory crime (CLS 1961, § 750.529).

2. ROBBERY—ARMED—ELEMENTS OF OFFENSE.
   The essential elements of robbery armed, under the statute, are (1) that an assault was committed by defendant upon complainant, (2) that defendant feloniously took any property which may be the subject of larceny, from the complainant or in his presence, and (3) that the defendant was armed with a weapon described in the statute (CLS 1961, § 750-.529).

3. SAME—ARMED—OWNERSHIP OF PROPERTY.
   The title to property taken is immaterial in connection with a charge of armed robbery, it not being necessary that the victim be the actual owner, since, as against a wrongdoer, actual possession or custody of the property is sufficient (CLS 1961, § 750.529).

4. SAME—STATUTES—OWNERSHIP OF PROPERTY TAKEN.
   The armed robbery statute makes no specific reference to the element of ownership of money or goods taken by a robber, it being enough that the money or other property belongs to someone other than the thief (CLS 1961, § 750.529).

5. SAME—STATUTES—POSSESSION OF PROPERTY TAKEN.
   The legality of a victim's possession does not prevent a prosecution for armed robbery, it being sufficient that the thief has no claim to ownership of the property taken (CLS 1961, § 750.529).

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur, Robbery § 1 et seq.
[2] 40 Am Jur, Robbery § 5 et seq.
[3–8] 40 Am Jur, Robbery § 9.

6. Same—Information—Armed—Ownership of Property.

Failure of information to show the true ownership of property taken during armed robbery *held,* not a fatal omission where the failure in no way misled defendant as to the charge which he had to meet (CLS 1961, § 750.529).

7. Same—Armed—Ownership of Property.

Neither legal title to property taken nor a valid principal-agent relation giving lawful possession to the person robbed is requisite to support a conviction under the armed robbery statute, it being enough that the property taken belonged to someone other than the thief (CLS 1961, § 750.529).

8. Same—Statute—Ownership of Property.

Claim of defendant, convicted of armed robbery after participating in the stealing of money from a service station through use of a sawed-off gun, that his conviction could not be sustained because the money was taken from a helper at the station who had no legal title to it and no right to its custody *held,* without merit, since title to the property taken is immaterial, under the statute, it being sufficient that the property belonged to someone other than the thief (CLS 1961, § 750.529).

Appeal from Ingham; Hughes (Sam Street), J. Submitted Division 2 June 6, 1967, at Lansing. (Docket No. 2,913.) Decided December 4, 1967.

Robert A. Needham was convicted of robbery armed. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Donald L. Reisig,* Prosecuting Attorney, and *E. Michael Stafford,* Assistant Prosecuting Attorney, for the people.

*Stiles & Fowler (Louis A. Smith,* of counsel), for defendant.

Lesinski, C. J. The defendant appeals his 1966 conviction for the offense of robbery armed,[1] entered pursuant to a jury verdict of guilty.

---

[1] CLS 1961, § 750.529 (Stat Ann 1965 Cum Supp § 28.797).

The conviction arose out of his alleged participation, along with George C. Kenney, in a robbery which took place December 17, 1965, at the Cavalier gasoline station, 3145 south Cedar street, Lansing, Michigan.

At the time the offense charged occurred, Richard F. Powers and James Antes were on the station premises. Powers had previously been an employee of the establishment, and Antes later served in this capacity, although neither had such status on this occasion. The station attendant, Ray Ricketts, had taken leave of the place to obtain refreshment. Ricketts had asked Antes to watch the station in his absence and had given Antes the key to the cash drawer. Powers joined Antes and the two of them waited on customers.

Kenney testified[2] to a prearranged plan which was executed by the defendant and himself. The defendant, who was driving Kenney's car, was to drop Kenney in the rear of the station. If more than two persons were present, defendant would just "pull through the station." If not, he would stop the car and raise the hood, and would, in this manner, draw an attendant to help him open and use a can of windshield de-icer. Kenney stated that the confederates put this plan into effect at the Cavalier gasoline station after going to the defendant's home to get a sawed-off gun. While the defendant diverted Antes' attention and kept him occupied with the windshield de-icer ruse, Kenney ordered Powers, at gunpoint, to open the cash drawer. Since Powers did not have the key, Kenney supplied him with a chisel to force open the drawer,

2 Kenney had not been tried for the offense at the time of defendant Needham's trial. He had been arraigned and had stood mute at that time. According to his replies on cross-examination, Kenney's trial had been postponed indefinitely for him to have an examination at the veteran's hospital, Ann Arbor, Michigan.

and ordered Powers to put its contents into a pillow-case furnished for this purpose by Kenney.

Powers and Kenney were apprehended separate-ly; the pillowcase and its contents were retrieved; and those suspected of the offense were charged with its commission.

The issue on appeal questions whether the de-fendant could be found guilty under Michigan law of robbery armed, where the person named in the information as having been assaulted and robbed of the property specified therein was neither the owner of the property nor the owner's agent. Other-wise stated, the issue questions whether Powers' "possession" of the named property was sufficient to sustain the charge and conviction.[3]

It is settled law in Michigan that the common-law crime of robbery is superseded in this State by statute;[4] therefore, we set forth the statutory of-fense defined in CLS 1961, § 750.529 (Stat Ann 1965 Cum Supp § 28.797), at this point.

"Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years. If an aggravated assault or serious injury is inflicted by any person while committing an armed robbery as defined in this section, the sentence shall be not less than 2 years' imprisonment in the state prison."

_____

[3] Defense counsel made several motions to dismiss on this ground at trial and adequately preserved the question for appellate review.

[4] See *People v. Powler* (1905), 142 Mich 225; and *People v. Calvin* (1886), 60 Mich 113.

According to 4 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 2218, pp 2441, 2442:

"The essential elements of robbery armed under the statute are:

"1. An assault by the defendant upon the complainant; and,

"2. A felonious taking of any property which may be the subject of larceny, from his person or in his presence; and,

"3. That the defendant was armed with a weapon described in the statute."

46 Am Jur, Robbery, § 9, p 143, states that "Obviously goods cannot be taken from 'the person of another or in his presence' unless the victim has possession or custody of the goods." Michigan case law has long held that it is not necessary that the victim be the actual owner. "As against a wrongdoer an actual possession or custody of the goods would be sufficient." *Durand* v. *People* (1882), 47 Mich 332, 334. *Durand* was later cited in *People* v. *Cabassa* (1930), 249 Mich 543, 547, where the person robbed was in charge of a gasoline station.

Here, however, Powers was not appointed to act as the custodian of the property by the actual owner. Since a case factually identical to the instant one has not come to our attention through appellate briefs or research, we turn to analogous reasoning for our determination.

The New Jersey court in *State* v. *Bowden* (1960), 62 NJ Super 339 (162 A2d 911, 914), stated that the essence of the crime "is not that the property belonged to a specific person, but rather that it was the property of someone other than the thief."

In *Barfield* v. *State* (1939), 137 Tex Crim 256 (129 SW2d 310, 313), where a porter and night watch-

man was the person assaulted and robbed, the court said: ·

"In robbery the property must be taken by force and violence, not necessarily from the owner, but from any person in possession thereof whose right of possession is superior to that of the robber. The very fact that the property is taken from a person by the use of firearms, violence or threatened violence, is, within itself, sufficient to show that the person from whom it was taken was in possession thereof."

In *State* v. *Pokini* (1961), 45 Hawaii 295 (367 P2d 499), the court noted that "the actual condition of the legal title is immaterial to the thief." On the same point, the *Pokini* court said, at 503:

"Just as in the case of larceny, 'one who has the right of possession as against the thief is, so far as the latter is concerned, the owner.'" (Citations omitted.)

*State* v. *Cottone* (1958), 52 NJ Super 316 (145 A2d 509), presented a situation wherein the person assaulted and robbed was a housekeeper who had been given the general responsibility of keeping a close watch over the owner's household in his absence, and this was held sufficient custody to sustain a robbery conviction. The court did not find it essential that the housekeeper be given custody of the specific property taken.

From this discussion it is apparent that had the attendant Ricketts been robbed, there would be no real issue for decision. However, Ricketts assigned his responsibility to Antes temporarily, who in turn "shared" it with Powers. As in *Cottone, supra,* it was a general responsibility to keep watch in his (Rickett's) absence.

The Court is not here faced with an agency ques-
tion as to whether Ricketts exceeded his authority
when he delegated the care of the station to Antes,
and further whether Antes had the authority to bring
in a "co-subagent." Rather, we are presented with
the sufficiency of possession of the person, one
Powers, from whom the property in question was
taken. His right to possession was certainly greater
than that of his assailant. It has been held that
stolen property can be the subject of a robbery. See
cases cited in *Pokini, supra,* and in *Levin* v. *United
States* (1964), 119 App DC 156 (338 F2d 265). The
illegality of the victim's possession does not prevent
a robbery prosecution. Here, the property was
feloniously taken by an assault with a dangerous
weapon in the presence of the victim who was forced
to give his assailant property over which he had a
greater right to possession than the thief, who had
no claim of ownership therein.

Although the information might well have been
more adequately drawn to include the true owner-
ship of the property as well,[5] the omission was not
a fatal defect. There is no claim that the defendant
was not apprised of the charge which he had to
meet. Neither legal title nor a valid principal-agent
relation is requisite to support a conviction under
the statute. We may say, as did the New Jersey
court in *State* v. *Ford* (1966), 92 NJ Super 356
(223 A2d 502, 506):

"The robbery statute makes no specific reference
to the element of ownership of the money or goods

[5] Similarly, in *State* v. *Bowden* (1960), 62 NJ Super 339 (162 A2d
911, 915), the court stated:
"It may well be preferable for a robbery indictment to expressly
negate ownership in the accused. But where the defendants can
show no respect in which that failure has prejudiced their substan-
tive rights, there appears no compelling reason, dictated by any
of the considerations of fairness to criminal defendants, which
would warrant invalidating the indictment at the expense of the
State's interest."

taken by the robber. It is enough that the cash or personalty belongs to someone other than the thief."

Affirmed.

QUINN and BAUM, JJ., concurred.